IN THE UNITED STATED DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| COLUMBUS CONSOLIDATED GOVERNMENT, | |
| Plaintiff, | CIVIL ACTION FILE NO.: |
| v. | |
| LOCAL ACCESS, LLC, | |
| Defendant. | JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW COLUMBUS CONSOLIDATED GOVERNMENT ("COLUMBUS") ("Plaintiff") and for a cause of action alleges as follows:

## INTRODUCTION

1.

This is an action for an accounting, injunctive relief and to recover all damages, and other remedies on behalf of Plaintiff and its Emergency 911 System (or "E911 System") arising out of the Defendant's failure to properly assess and pay 911 charges to Plaintiff as required by Georgia law. As further set forth herein, Plaintiff is entitled to recover the funds which Defendant telephone company has

failed to bill, collect, report and remit to Plaintiff for the operation of its Emergency 911 System.

## PARTIES, JURISDICTION AND VENUE

2.

Plaintiff, Columbus, is a municipality, i.e., a consolidated governmental entity and municipal corporation sited in Muscogee County, Georgia, organized under the laws of the State of Georgia, which operates or contracts for the operation of an emergency 911 system as described in O.C.G.A. § 46-5-122(5). The Columbus Consolidated Government 911 Communications Center ("CCG 911 Center") provides a local government service which facilitates the placing of calls by persons who are in need of emergency services by dialing the number 9-1-1 and under which emergency calls are answered and or otherwise responded to by a Public Safety Answering Point (PSAP). The PSAP answers and processes 911 and other emergency telephone calls and dispatches public safety responders in all areas served by CCG's emergency 911 system. Columbus voluntarily submits itself to the jurisdiction of this Court.

3.

Defendant, Local Access LLC, (hereinafter "Local Access"), is a foreign limited liability company organized under the laws of the state of Florida, authorized

to do business in the State of Georgia since 2012, with its principal place of business currently located at 11442 Lake Butler Blvd., Windermere, FL, 34786.  Local Access is engaged in the business of providing telephone services to residents and businesses and is subject to the jurisdiction of this Court because it is registered to do business in this District and does transact business within this District.  No member of Local Access is a citizen of the state of Georgia.  Defendant Local Access may be properly served via its registered agent, Incorp Services, Inc., 2000 Riveredge Parkway NE, Suite 885 Atlanta, Georgia 30328.

4.

This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds $75,000.00 in value exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff and Defendant, including the members/managers of the LLC Defendant.

5.

Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia since a substantial part of the events or omissions giving rise to the claims occurred within this District.

## COMPLAINT OVERVIEW

### 6.

This action is brought exclusively under the common law and statutes of the State of Georgia.  No federal claims are asserted in this Complaint, and to the extent that any allegation set forth herein may be construed to have stated a claim under federal law, the same is expressly denied and disclaimed by Plaintiff.

### 7.

The allegations and claims set forth herein are brought solely by and on behalf of Plaintiff operating its Emergency 911 System.

## FACTUAL ALLEGATIONS

### 8.

Georgia and other states have enacted laws providing for the creation of Emergency 911 Systems, in order to establish local emergency telephone service commonly referred to as "911 Service."  These Emergency 911 Systems have been established by the governing authorities of Georgia counties or municipalities, which operate or contract for the operation of these E911 Systems.  Georgia law provides for the funding of these E911 Systems by authorizing local governments to assess a charge on any telephone service, which is defined as any method by which a 911 emergency call is delivered to a PSAP, including local exchange telephone service

or other telephone communication service, wireless service, prepaid wireless service, mobile telecommunications service, computer service, Voice over Internet Protocol service, or any technology that delivers or is required by law to deliver a call to a PSAP.

9.

At all times relevant to this action, Plaintiff imposed valid 911 fees authorized by Georgia law.

10.

Plaintiff operates or contracts to operate an extensive facility staffed by trained personnel 24 hours a day, 7 days a week, that receives 911 telephone calls and transmits emergency information to the proper authorities.

11.

Not all 911 services are the same. When a 911 telephone call is placed, the level of service available is different depending on whether the caller has paid 911 charges to the local government providing 911 service in that area, or the caller is a member of the general public who has not paid such charges to the local government actually providing the 911 services.

12.

The level of 911 service available also is different because telephone subscribers in Plaintiff's service areas may have "Smart 9-1-1" services not available to the general public that allow them to pre-register anticipated 9-1-1 needs for special circumstances, such as "senior with Alzheimer's" or "child with disability."

13.

The level of 911 service available also is different because telephone subscribers in Plaintiff's service areas may have available "Text-to-911" services not available to the general public that allow them to request 911 assistance by text instead of a telephone call.

14.

Plaintiff relies on 911 charges to provide its emergency, often life-saving, services.

15.

The Defendant is a telephone service supplier within Columbus.

16.

Applicable law, O.C.G.A. § 46-5-134 (the "E911 Statute"), requires telephone service suppliers, such as Defendant, to bill, collect, report and remit 911 charges

for every telephone subscriber, excluding those persons or entities otherwise exempt from such charges.

17.

O.C.G.A. § 46-5-134(e)(1) provides that a wireless service supplier may recover its costs expended on the implementation and provision of wireless enhanced 911 services in an amount not to exceed 30 cents of each 911 charge. This process is known as "cost recovery" for wireless enhanced 911 services.

18.

O.C.G.A. § 46-5-122(17) provides that when the same person, business, or organization has several telephone access lines, each exchange access facility shall constitute a separate subscription.

19.

O.C.G.A. § 46-5-134(d)(4) provides that the local government may on an annual basis, and at its expense, audit or cause to be audited the books and records of service suppliers with respect to the collection and remittance of 911 charges.

20.

Defendant, and/or persons or entities acting on its behalf, has failed to bill, collect, report, and remit 911 charges in accordance with the law.

**A.**    **Defendant's    Purposeful    Under-Billing,    Under-Collecting,    and Underpayment of 911 Charges for Business Lines Provided by Multiplexed Circuits**

21.

Many of Defendant's exchange access lines are provided through the use of a technology known as "multiplexing."  Broadly speaking, multiplexing refers to a group of technologies that allow many different signals (e.g., multiple phone calls) to travel through one physical circuit simultaneously.

22.

Defendant provides the majority of its multiplexed circuits to commercial customers.  In particular, among other products, Defendant offers these customers up to 24 exchange access lines, channels, or pathways through a single physical line known as a "T-1" line.[1]

23.

Each of the exchange access lines, channels, or pathways can be assigned one or more 10-digit telephone numbers.  Thus, many more than 24 10-digit telephone

---

[1] The T-1 line provided by Defendant typically uses a service level known as the "Primary Rate Interface" ("PRI").  PRI is a standard method of dividing the flow of information through a T-1 line; in particular, within the United States, this means that a single T-1 line will have up to 24 exchange access lines (also known as "channels" when referring to T-1 lines).  For users who have more than one PRI, the additional PRIs may provide 24 voice channels.

numbers or "handsets" can be used to access 911 emergency services, and as many as 24 can be used to call 911 simultaneously.

24.

Defendant is required to bill, collect, report, and remit to the local governments operating Emergency 911 systems 911 charges of up to $1.50 per month for every exchange access line, channel, or pathway.  Pursuant to O.C.G.A. § 46-5-134(d)(1), these receipts, less a three-percent (3%) administrative fee, are to be remitted to the local governing authority each quarter.

25.

Defendant does not meet its obligation to Plaintiff.  Instead, Defendant bills, collects, reports and remits 911 charges on only a small fraction of the lines, pathways, or channels supplied through each multiplexed circuit.

26.

By not billing and collecting all the required 911 charges, Defendant is able to provide telecommunication services at prices that are cheaper than its competitors, particularly to its business customers, and, thereby, gain a competitive advantage.

27.

Defendant has known that Georgia law and the law of other states require it to bill, collect, report, and remit 911 charges for each line, pathway or channel that could be used to access 911 services.

28.

Defendant owed a specific legal obligation, pursuant to O.C.G.A § 46-5-134, to bill, collect, report, and remit the correct amount of 911 charges to Plaintiff and failed to do so.

29.

Prior to the filing of this action, Defendant never informed the Plaintiff that it was not billing, collecting, reporting and remitting 911 charges on the correct number of exchange access lines in the Plaintiff's 911 service areas.

30.

The above-described practices deprive Plaintiff's Emergency 911 System of critical financial resources.

**B.**     **<u>Defendant's Failure to Bill, Collect, Report, and Remit 911 Charges for VoIP Users</u>**

31.

Defendant provides wired telephone service to users of voice over internet protocol (VoIP) technology.

32.

Defendant is required to bill, collect, report, and remit a 911 charge for every 10-digit telephone number that they provide to users of VoIP technology.

33.

Defendant has failed to fulfill this obligation by issuing 10-digit telephone numbers and providing wired-access to VoIP users without billing, collecting, reporting or remitting 911 charges to the Plaintiff's Emergency 911 System.

34.

By not billing and collecting 911 charges from VoIP users, Defendant is able to offer VoIP users lower cost service and has, thus, gained a competitive advantage over other telephone service providers who follow the law.  Defendant is also causing the Plaintiff's Emergency 911 System to provide 911 services to VoIP users from whom no 911 charges are being billed or collected and are depriving the Plaintiff's Emergency 911 System of critical financial resources.

## __DAMAGES__[2]

35.

Upon information and belief, during the last three (3) years, Defendant has failed to remit 911 fees owed to Plaintiff.

36.

Upon information and belief, during the last three (3) years alone, Defendant has failed to remit 911 fees owed to Columbus in the approximate amount of $81,000.

37.

In conducting the business activities described herein in the State of Georgia and failing to bill, collect, report and remit the 911 fees as Georgia law requires, Defendant knew or should have known that its conduct would cause Plaintiff the

---

[2] The damage figures set out below are based on data provided by the Federal Communications Commission ("FCC"), other telecom data sources and information in possession of Plaintiffs. Nevertheless, a large amount of data remains solely in the possession of Defendant and will not be available to Plaintiff until discovery commences. For example, within an area serviced by Plaintiff, telephone numbers may have been "ported" by customers from their former telecom provider to their current provider. Plaintiff knows which provider currently manages each number and which carriers had a net loss of telephone numbers in recent years and which carriers had a net gain. However, those metrics are not factored into these damage figures because the telecom environment is extremely fluid. Therefore, Plaintiff will use its analysis of telephone number portability to refine the damage projections after discovery has clarified which numbers have a primary place of use in which areas.

injuries complained of herein, including the unnecessary trouble and expense of being required to file the instant action.

38.

Alternatively, in conducting the business activities described herein in the State of Georgia and failing to bill, collect, report and remit the 911 fees as Georgia law requires, Defendant acted with conscious disregard or with reckless indifference to the consequences, aware that their conduct would cause Plaintiff the injuries complained of herein, including the unnecessary trouble and expense of being required to file the instant action.

**<u>COUNT I:</u>**
**<u>PETITION FOR ACCOUNTING</u>**

39.

Plaintiff incorporates all the preceding paragraphs of this Complaint as if fully stated herein.

40.

O.C.G.A. § 46-5-134(i) requires 911 service suppliers such as Defendant to maintain books and records of the 911 charges they bill and collect for a period of at least three years from the date of collection.

41.

Pursuant to O.C.G.A. § 46-5-134(d)(4), Plaintiff is entitled to conduct an annual audit of the books and records of 911 service suppliers such as Defendant.

42.

Plaintiff therefore requests that this Court issue an order requiring Defendant to produce books and records sufficient for Plaintiff to determine whether Defendant is remitting 911 charges as the law requires, including but not limited to: (1) the identity of each subscriber and number of lines (including all telephone numbers) provided by Defendant in Plaintiff's 911 service area; (2) the number, identity, and description of subscribers who have been excluded from paying 911 charges; and (3) the complete basis used by Defendant to calculate their enhanced 911 wireless cost recovery for Plaintiff.

## COUNT II:
## RECOVERY FOR VIOLATIONS OF THE E911 STATUTE

43.

Plaintiff hereby incorporates the allegations set forth in previous paragraphs of this Complaint as if fully set forth herein.

44.

The E911 Statute imposes upon Defendant a duty to bill, collect, report, and remit to Plaintiff the 911 charges upon each line or pathway capable of initiating a

911 emergency call to Plaintiff's 911 Center that Defendant supplied to service users in Plaintiff's 911 service areas.

45.

Plaintiff was an intended beneficiary within the protection of the E911 Statute. The 911 charges that the E911 Statute required Defendant to bill, collect, report, and remit to Plaintiff provided the principal source of funding for Plaintiff's provision of 911 services.

46.

In violation of the E911 Statute and in breach of its duty, Defendant did not bill, collect, report, and remit to Plaintiff all 911 charges upon each line or pathway capable of initiating a 911 emergency call to Plaintiff's 911 Center that Defendant supplied to service users in Plaintiff's 911 service areas.

47.

Plaintiff has a right of action under the E911 Statute to recover from Defendant all 911 charges that Defendant was required to bill, collect, report, and remit to Plaintiff.

48.

The existence of a right of action under the E911 Statute is consistent with the E911 Statute's underlying purpose of providing a means for delivery of 911 services

to the public.  If the E911 Statute cannot be enforced by E911 providers, such as Plaintiff, against service suppliers, such as Defendant, who purposefully or negligently fail to fulfill their obligations under the E911 Statute, no means would exist to ensure service suppliers comply with their duties.

### 49.

Defendant's violation of the E911 Statute proximately caused Plaintiff to suffer significant injury, including the loss of significant operational funds to which it was and is entitled.

### 50.

For these reasons, Plaintiff prays that the Court enter judgment against Defendant in Plaintiff's favor, and award compensatory damages, punitive damages, costs, and any other relief to which Plaintiff may be entitled.

## COUNT III:
## BREACH OF STATUTORY DUTIES

### 51.

Plaintiff hereby incorporates the allegations set forth in all previous paragraphs of this Complaint as if fully set forth herein.

52.

Plaintiff brings this action to recover damages for Defendant's breach of legal duties owed by virtue of the requirements of O.C.G.A. § 46-5-134 and by virtue of O.C.G.A. §§ 51-1-6 and 51-1-8.

53.

Defendant violated its legal duties and obligations to Plaintiff by failing to bill, collect, report and remit 911 charges for every telephone subscriber as required by O.C.G.A. § 46-5-134.

54.

Defendant's respective violations of the E911 Statutes and Georgia legal duties proximately caused substantial damage to the Plaintiff, which it is entitled to recover.

55.

For these reasons, Plaintiff prays that the Court enter judgment against Defendant in Plaintiff's favor and award it compensatory and punitive damages in amounts to be determined by the jury, plus interests and costs, and any other relief to which Plaintiff may be entitled.

## COUNT IV:
## BREACH OF FIDUCIARY DUTY

### 56.

Plaintiff hereby incorporates the allegations set forth in all previous paragraphs of this Complaint as if fully set forth herein.

### 57.

During all relevant times, Defendant was under a fiduciary duty to bill, collect, report, and remit to Plaintiff the 911 charges upon each line or pathway capable of initiating a 911 emergency call to Plaintiff's 911 Center supplied by Defendant to service users of Columbus.  Defendant was further obligated by its fiduciary duty to remit to Plaintiff those 911 charges, less an administrative fee.  These fiduciary duties were imposed upon Defendant by the E911 Statute and common law and derive from the special and confidential relationship between Plaintiff and Defendant.

### 58.

The fiduciary relationship between the parties gave rise to a duty of care on the part of Defendant to Plaintiff whereby Defendant would act with utmost good faith, loyalty, and honesty toward Plaintiff.

18

59.

The E911 Statute sets out a system to fund 911 emergency services that requires E911 providers, such as Plaintiff, to rely upon telecommunications suppliers, such as Defendant, to act in good faith and with honesty in billing, collecting, reporting, and remitting to Plaintiff the appropriate 911 charges.

60.

Plaintiff has had to rely on Defendant to act in good faith and with honesty because Plaintiff is not aware of the actual number of business or residential lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center supplied by Defendants to service users in Plaintiff's 911 service areas or of the actual amount of 911 charges Plaintiff should receive.  Defendant has sole and exclusive control of that information.

61.

As the sole party possessing the information needed to determine the correct amount of 911 charges that should have been paid or transmitted to Plaintiff, Defendant was in a dominant position in its relationship with Plaintiff.  As Defendant determined the amount of 911 charges received by Plaintiff, and as those 911 charges made were the principal source of the Plaintiff's Emergency 911 System's operating

and capital funds, Defendant effectively exercised control over Plaintiff's E911 System.

62.

In relying on Defendant to perform its statutory obligations, Plaintiff trusted Defendant would act with utmost good faith, loyalty, and honesty toward Plaintiff.

63.

Defendant knowingly breached its fiduciary duties to Plaintiff and the standard of care by:

(a) concealing from Plaintiff the actual number of lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center supplied by Defendant to service users in Columbus;

(b) concealing from Plaintiff the correct amount of 911 charges owed to Plaintiff;

(c) failing to bill, collect, report, and remit to Plaintiff the full amount of 911 charges owed to Plaintiff; and

(d) misleading Plaintiff concerning the actual amount of 911 charges owed to Plaintiff.

64.

Defendant's breach of their fiduciary duties and the standard of care injured Plaintiff, proximately causing Plaintiff to lose significant amounts of revenue needed to fund Plaintiff's essential emergency services.

65.

For these reasons, Plaintiff prays that the Court enter judgment against Defendant in Plaintiff's favor and award it compensatory and punitive damages in amounts to be determined by the jury, plus interest and costs, and any other relief to which Plaintiff may be entitled.

## COUNT V:
## FRAUDULENT MISREPRESENTATION

66.

Plaintiff hereby incorporates the allegations set forth in all previous paragraphs of this Complaint as if fully set forth herein.

67.

The E911 Statute imposes upon Defendant a duty to bill, collect, report, and remit to Plaintiff the 911 charges upon each line or pathway capable of initiating a 911 emergency call to Plaintiff's 911 Center supplied by Defendant to service users in Columbus.

21

68.

Defendant submitted to Plaintiff Quarterly Reports that purported to accurately identify, during the time period of the reports, the number of business and residential lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center that were supplied by Defendant to service users in Columbus.

69.

Defendant's statements to Plaintiff in its Quarterly Reports purported to express existing or past facts as to the actual number of lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center supplied by Defendant to service users in Columbus, and, correspondingly, the actual amount of 911 charges to be billed, collected, reported, and remitted to Plaintiff under the E911 Statute.

70.

Defendant's statements to Plaintiff in its Quarterly Reports were false at the time they were made, as Defendant omitted a significant number of lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center and under-reported the amount of 911 charges owed to Plaintiff under the E911 Statute.

71.

As the purpose of the statements in the Quarterly Reports was to communicate the basis for the emergency service charge payment due to Plaintiff, Defendant's

statements regarding the number of lines it supplied and the amount of 911 charges owed to Plaintiff misrepresented material facts.

72.

At the time Defendant made these representations in its Quarterly Reports regarding the number of business and residential pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center and corresponding amount of 911 charges owed to Plaintiff, Defendant knew the representations were false, because it knew it supplied more lines capable of initiating a 911 emergency call to Plaintiff's 911 Center than it represented in its statements.

73.

Defendant made these material, false representations to Plaintiff intending to deceive them.

74.

Plaintiff, having no knowledge that Defendant's representations identified above were not truthful, justifiably relied upon the misrepresentations and suffered damages as a proximate result, including loss of operating and capital funds to which it was statutorily entitled.

75.

For these reasons, Plaintiff prays that the Court enter judgment against Defendant in Plaintiff's favor awarding compensatory and punitive damages in amounts to be determined by the jury, plus costs, interests, and any other relief to which Plaintiff may be entitled.

## COUNT VI:
## FRAUDULENT CONCEALMENT

76.

Plaintiff hereby incorporates the allegations set forth in all previous paragraphs of this Complaint as if fully set forth herein.

77.

Defendant owed a duty to Plaintiff under the E911 Statute and common law to truthfully and accurately identify in its Quarterly Reports the number of lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center that were supplied by Defendant to service users in Columbus.

78.

Defendant submitted to Plaintiff Quarterly Reports that purported to accurately identify, during the time period of the reports, the number of lines or

pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center that were supplied by Defendant to service users in Plaintiff's 911 service areas.

79.

Defendant's statements to Plaintiff in its Quarterly Reports purported to express existing or past facts as to the actual number of lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center supplied by Defendant to service users in Plaintiff's 911 service areas, and, correspondingly, the actual amount of 911 charges to be remitted to Plaintiff under the E911 Statute.

80.

Defendant's statements to Plaintiff in their Quarterly Reports were false at the time they were made, as Defendant omitted or concealed the number of lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center that were supplied by Defendant to service users in Plaintiff's 911 service areas, and thereby underreported the amount of 911 charges owed to Plaintiff under the E911 Statute.

81.

As the purpose of the statements in the Quarterly Reports was to communicate the basis for the emergency service charge payment to Plaintiff, Defendant's false

statements or omissions of fact regarding the number of lines it supplied and the amount of 911 charges owed to Plaintiff misrepresented material facts.

82.

At the time Defendant made the statements to Plaintiff in its Quarterly Reports, which omitted or concealed the number of lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center that were supplied by Defendant, it knew the statements were false or omitted material facts and intended to conceal that information from Plaintiff to induce it to refrain from acting, *i.e.,* to induce Plaintiff to refrain from requiring Defendant to truthfully and accurately identify in their Quarterly Reports the number of lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center that were supplied by Defendant and bill, collect, report and remit the amount of 911 charges actually owed to Plaintiff.

83.

Plaintiff, having no knowledge of Defendant's concealment of this information, justifiably relied upon the misrepresentations or omissions and suffered damages as a proximate result, including loss of operating and capital funds to which it was statutorily entitled.

26

84.

For these reasons, Plaintiff prays that the Court enter judgment against Defendant in Plaintiff's favor awarding compensatory and punitive damages in amounts to be determined by the jury, plus costs, interests, and any other relief to which Plaintiff may be entitled.

## COUNT VII:
## NEGLIGENT MISREPRESENTATION

85.

Plaintiff hereby incorporates the allegations set forth in all previous paragraphs of this Complaint as if fully set forth herein.

86.

In its Quarterly Reports, Defendant supplied false information to Plaintiff purporting to identify, during the time period of the reports, the number of lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center that were supplied by Defendant to service users in Columbus.

87.

The information provided by Defendant misrepresented or omitted and concealed the actual number of business and residential lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center that were supplied by Defendant to service users in Plaintiff's 911 service areas, and consequently, the

amount of 911 charges due to Plaintiff under the E911 Statute. Specifically, Defendant's statements were false in that they omitted a significant number of lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center that were supplied by Defendant to service users in Plaintiff's 911 service areas, and thus, under-reported the amount of 911 charges to which Plaintiff was entitled under the E911 Statute.

88.

Despite its ability to do so, Defendant did not exercise reasonable care in communicating this false information or in making a determination as to whether the information it was communicating to Plaintiff was truthful or accurate. Defendant failed to communicate to Plaintiff that Defendant's reports did not truthfully or accurately identify the number of business and residential lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center that were supplied by Defendant to service users in Plaintiff's 911 service areas.

89.

Plaintiff was known to Defendant and it was foreseeable to it that Plaintiff would rely on the false information provided by Defendant in its Quarterly Reports.

90.

Plaintiff, having no knowledge that Defendant's representations identified above were untruthful, reasonably relied upon the misrepresentations and suffered damages as a proximate result, including loss of operating and capital funds to which it was statutorily entitled.

91.

For these reasons, Plaintiff prays that the Court enter judgment against Defendant in Plaintiff's favor awarding compensatory damages in an amount to be determined by the jury, plus costs, interests, and any other relief to which Plaintiff may be entitled.

## COUNT VIII:
## NEGLIGENCE AND NEGLIGENCE *PER SE*

92.

Plaintiff hereby incorporates the allegations set forth in all previous paragraphs of this Complaint as if fully set forth herein.

93.

Defendant was under statutory and common law duties to submit to Plaintiff payment of the proper amount of 911 charges. The E911 Statute imposed upon Defendant a statutory duty to bill, collect, report, and remit to Plaintiff 911 charges for all lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911

Center that were supplied by Defendant to service users in Plaintiff's 911 service areas.  Defendant was also under a statutory and common law duty to bill, collect, report, and remit to Plaintiff the 911 charges in good faith and in accordance with the standards applicable to reasonable service suppliers.

94.

Defendant breached these duties by failing to exercise reasonable care to determine that they were properly billing and collecting for all lines or pathways capable of a 911 emergency call to Plaintiff's 911 Center that were supplied by Defendant to service users in Plaintiff's 911 service areas.  Defendant also breached these duties by failing to use reasonable care to ensure that the amounts remitted to Plaintiff were the full and appropriate amounts for all lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center that were supplied by Defendant to service users in Plaintiff's 911 service areas.

95.

Defendant's breaches of its duties to exercise reasonable care in the billing, collecting, reporting and remitting of 911 charges actually and proximately caused injury to Plaintiff, including loss of operating and capital funds to which Plaintiff was statutorily entitled.

96.

Defendant's breach of the statutory duty imposed by the E911 Statute also constituted negligence *per se*. The E911 Statute imposed a duty on Defendant to bill, collect, report, and remit to Plaintiff 911 charges on all lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center that were supplied by Defendant to service users in Plaintiff's 911 service areas.

97.

Plaintiff was within the class of persons the E911 Statute was designed to protect as they were an intended recipient of the 911 charges, and relied on payment of those charges to fund their essential, legislatively-authorized operations.

98.

Plaintiff's injuries, including its failure to receive the funds to which it is entitled under the E911 Statute, are the precise injuries the E911 Statute was designed to prevent, and these injuries hinder and impair Plaintiff's ability to provide 911 services in furtherance of the E911 Statute's stated purposes.

99.

Defendant's breaches of their statutory and common-law duties proximately caused injury to Plaintiff, including loss of operating and capital funds to which Plaintiff was statutorily entitled.

100.

For these reasons, Plaintiff prays that the Court enter judgment against Defendant in Plaintiff's favor awarding compensatory damages in an amount to be determined by the jury, plus costs and interest.

## COUNT IX:
## REQUEST FOR DECLARATORY JUDGMENT

101.

Plaintiff incorporates the allegations set forth in all previous paragraphs of this Complaint as if fully set forth herein.

102.

Plaintiff brings this action for declaratory relief pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 and demand a trial by jury of all issues triable as of right by a jury.

103.

An actual, present, and justiciable controversy has arisen and now exists between Plaintiff and Defendant concerning Defendant's legal obligations under the E911 Statute to bill, collect, report, and remit to Plaintiff payment of emergency 911 charges based on the number of lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center, including lines or pathways supplied by

multiplex circuits, single business and residential circuits, and Defendant's conduct in discounting 911 charges to its subscribers to seek competitive advantage or for other reasons.

104.

Plaintiff contends, and the Defendant disputes, that the E911 Statute has at all relevant times imposed upon Defendant the obligation to bill, collect, report and remit payment to Plaintiff of 911 charges for all lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center that were supplied by Defendant to service users in Plaintiff's 911 service areas, as set forth herein.

105.

A judicial declaration regarding these issues is necessary and appropriate so that Plaintiff may ascertain and effectively enforce its rights to receive full and complete payment of 911 charges as authorized by the E911 Statute.  For these reasons, Plaintiff prays that the Court issue a declaratory judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 expressly holding that the E911 Statute at all relevant times has imposed upon Defendant the obligation to bill, collect, report, and remit to Plaintiff 911 charges for all lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center that were supplied by Defendant to service

users in Plaintiff's 911 service areas, and that Defendant may not forego collection of 911 charges or reduce 911 charges to gain competitive advantage or otherwise.

106.

For these reasons, Plaintiff prays that the Court enter a declaratory judgment against Defendant in their favor and Plaintiff further demands a jury trial as to all issues triable as of right by a jury.

## COUNT X:
## REQUEST FOR PERMANENT INJUNCTION

107.

Plaintiff hereby incorporates the allegations set forth in all previous paragraphs of this Complaint as if fully set forth herein.

108.

Defendant is obligated by the E911 Statute and other applicable law to truthfully submit to Plaintiff reports and complete records or statements of all lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center that were supplied by Defendant to service users in Plaintiff's 911 service areas and to remit to Plaintiff for all such lines or pathways the full and appropriate amount of the 911 charges imposed by Plaintiff.

109.

Defendant's failure to meet its statutory obligations have and will continue to irreparably harm Plaintiff, because Plaintiff relies upon the 911 charges to provide funding for its vital operations.

110.

Defendant's failure to meet its statutory obligations have threatened, and will continue to threaten, the public safety.

111.

Plaintiff does not have any other adequate legal remedy, as future enforcement of its rights under the E911 Statute would likely require Plaintiff to file and litigate multiple actions.

112.

A permanent injunction, an equitable remedy, is warranted considering the balance of hardships between the parties. Defendant would suffer absolutely no legally cognizable harm from being required to meet its statutory obligations. Conversely, Plaintiff and the public would be manifestly and actually harmed by Defendant's failure to fulfill its statutory obligations.

113.

The public interest would be served by the issuance of a permanent injunction.

114.

For these reasons, Plaintiff prays that the Court permanently enjoin Defendant from failing to bill, collect, truthfully report, and remit to Plaintiff 911 charges for all lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center that are supplied by Defendant to service users in Plaintiff's 911 service areas.

115.

This is Plaintiff's first application for extraordinary relief.

**WHEREFORE**, Plaintiff respectfully requests that the Court grant the following relief:

(a) That proper process issue and be served upon Defendant requiring it to appear and answer this Complaint in the manner and within the time permitted by law;

(b) That along with its quarterly receipt remittances required by O.C.G.A. § 46-5-134, Defendant provides Plaintiff's Emergency 911 System a record of its accounts;

(c) That judgment enter against Defendant and in favor of Plaintiff in the amount to be determined at trial, together with damages, punitive damages, and all pre- and post-judgment interest accruing under applicable law;

36

(d) That this Court enter a declaration that at all relevant times the E911 Statute imposed upon Defendant the obligation to bill, collect, report, and remit to Plaintiff 911 charges for all lines or pathways capable of initiating a 911 emergency call to Plaintiff's 911 Center that were supplied by Defendant to service users in Plaintiff's 911 service areas;

(e) That this Court permanently enjoin Defendant from failing to fully and truthfully bill, collect, report, and remit to Plaintiff 911 charges for each line or pathway capable of initiating a 911 emergency call to Plaintiff's 911 Center that was supplied by Defendant to service users in Plaintiff's 911 service areas;

(f) That Plaintiff be awarded its costs of this action, including its reasonable attorney fees;

(g) That a jury be impaneled to try all issues so triable by a jury; and

(h) That the Court award Plaintiff such other general and special relief to which it may be entitled, as the Court deems appropriate, and as justice and equity may require.

Respectfully submitted this 4th day of January, 2017.

**EVANGELISTA WORLEY, LLC**

_____/s David J. Worley_____
DAVID J. WORLEY
Georgia Bar No. 776665

**THE BARNES LAW GROUP, LLC**

_____/s John R. Bevis_____
ROY E. BARNES
Georgia Bar No. 039000

JAMES M. EVANGELISTA                    JOHN R. BEVIS
Georgia Bar No. 707807                  Georgia Bar No. 056110

8100 Roswell Road                       31 Atlanta Street
Suite 100                               Marietta, GA 30060
Atlanta, GA 30350                       Telephone: 770-227-6375
Telephone:  404-205-8400                Fax: 770-227-6373
Facsimile:  404-205-8395                roy@barneslawgroup.com
david@ewlawllc.com                      bevis@barneslawgroup.com
jim@ewlawllc.com

**HARRIS PENN LOWRY, LLP**

_____/s  Jeffrey R. Harris_____
JEFFREY R. HARRIS
Georgia Bar No. 330315

1201 Peachtree Street, NE
400 Colony Square, Suite 900
Atlanta, GA 30361
Telephone: 404-961-7650
Facsimile: 404-961-7651
jeff@hpllegal.com

*ATTORNEYS FOR PLAINTIFFS*